**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RMB PROPERTIES, LLC SERIES I,<br><br>Plaintiff,<br><br>v.<br><br>171 ATLANTIC ROAD LLC,<br><br>Defendant. | Civil Action No. 23-10489-MJJ |

**MEMORANDUM OF DECISION**

September 4, 2024

JOUN, D.J.

On March 2, 2023, buyer RMB Properties, LLC Series I ("RMB" or "Plaintiff") filed a Complaint alleging various counts against seller 171 Atlantic Road LLC ("171 Atlantic" or "Defendant"). [Doc. No. 1]. The claims center around a Purchase and Sale Agreement between RMB and 171 Atlantic and the warranties therein. [*Id.*]. Specifically, RMB alleges that 171 Atlantic failed to make repairs to a $4.7 million renovated property located at 171 Atlantic Road, Gloucester, MA (the "Property") sold to RMB and caused severe latent defects due to improper design, material and workmanship. [Doc. No. 40].[1] Now before me are Motions for Sanctions filed by RMB relating to discovery violations. [Doc. Nos. 47, 67, 73]. I held a hearing on the original Motion for Sanctions on January 11, 2024, and a hearing on the renewed Motion for Sanctions on March 6, 2024. [Doc. Nos. 60, 71].

[1] The original Complaint alleges three counts—Breach of Contract, Breach of Warranty, and Declaratory Judgment. [Doc. No. 1]. On October 24, 2023, RMB filed an Amended Complaint, which included an additional claim against 171 Atlantic, Breach of the Implied Warranty of Habitability. [Doc. No. 40].

Taking various factors together, including the severity and repetitive nature of the discovery violations, the lack of legitimate excuse by 171 Atlantic, and the prejudicial effect to RMB, I impose the following non-economic sanction: pursuant to Federal Rule of Civil Procedure 37, 171 Atlantic is prohibited from introducing into evidence at any deposition, hearing, or trial any documents or communications which are responsive to RMB's First Set of Discovery Requests and which 171 Atlantic failed to produce as of March 6, 2024. I also order reasonable attorney's fees and costs to RMB in the amount of $79,610.02.

## I. PROCEDURAL AND FACTUAL BACKGROUND

I summarize the relevant procedural background as follows:

### A. <u>RMB's Motion to Compel and the October 2023 Order</u>

On September 12, 2023, RMB filed a Motion to Compel, after 171 Atlantic had failed to produce responsive documents to its discovery requests, particularly Requests for Production ("RFP") No. 7 and RFP No. 9, documents relating to the Property and the renovation of the Property.[2] [Doc. No. 27, 29]. In its Motion to Compel, RMB requested the following: (1) "any and all pre-construction pictures of the Property; (2) any and all pictures taken during the construction of the Property; (3) 171 Atlantic's entire project file for its work on the Property; (4) any and all engineering reports for the Property; (5) any and all communications with Melanson Development Group regarding the Property; (6) all documents responsive to RFP 9"

[2] On June 1, 2023, RMB served discovery requests on 171 Atlantic, to which 171 Atlantic responded on July 14, 2023, which included approximately 350 pages of documents. [Doc. No. 29-1; Doc. No. 29-2; Doc. No. 54 at 4; Doc. No 70 at 2]. On July 31, 2023, RMB sent a deficiency letter stating incomplete document production, and identified subcategories of documents related to RFP No. 7. [Doc. No. 29 at 3; Doc. No 29-3, Doc. No. 70 at 2]. On August 10, 2023, 171 Atlantic made a supplemental production of 121 pages, which did not include responsive documents, according to RMB. [Doc. 29 at 5; Doc. No. 70 at 2]. On August 25, 2023, RMB sent a second deficiency letter, which emphasized 171 Atlantic's lack of production relating to RFP No. 7 and RFP No. 9. [Doc. 29 at 3; Doc. 29-4; Doc. No. 70 at 2]. Prior to this filing, RMB requested a discovery conference to resolve the dispute; however, 171 Atlantic did not respond to the request. [Doc. No. 29 at 1, 8–9].

("Responsive Documents"). [Doc. No. 29 at 9]. According to discovery produced by the parties, Bryan Melanson is manager and owner of 171 Atlantic, the entity that sold the Property to RMB. Bryan Melanson also owns and manages the Melanson Development Group Inc (the "Melanson Group"), the entity that renovated the Property. [Doc. No. 42 at 3 n.3].

On October 25, 2023, Magistrate Judge Boal held a hearing on RMB's initial Motion to Compel. [Doc. No. 41]. In an order issued the next day (the "October 2023 Order"), Judge Boal found that RMB's requested documents were relevant and discoverable, and ordered 171 Atlantic to search for and produce the Responsive Documents. [Doc. No. 42 at 4]. If no such documents were found, 171 Atlantic was ordered to produce a sworn certification, signed by counsel and his client, attesting that no such documents were found after diligent search. [*Id.*]. The Responsive Documents or the certification were ordered to be produced within two weeks. [*Id.*]. RMB's request for sanctions was denied, but counsel for 171 Atlantic was informed "that failure to abide by the rules in the future may subject them to sanctions." [*Id.*].

### B. Aftermath of the October 2023 Order

On November 6, 2023, after the October 2023 Order, 171 Atlantic produced over a hundred additional documents. [Doc. No. 46 at 3; Doc. No. 70 at 3]. However, unsatisfied with the production, RMB sent a third deficiency letter on November 9, 2023, and requested a discovery conference. [Doc. No. 46 at 3; Doc. No. 54 at 4; Doc. No. 70 at 3]. On November 16, 2023, the parties discussed the alleged deficiencies. [Doc. No. 46 at 3]. The same day, RMB served 171 Atlantic with its Notice of Intent to Serve Subpoenas and copies of subpoenas sent to entities involved in the project. [Doc. No. 46 at 3; Doc. No. 70 at 3]. Specifically, RMB sent third party subpoenas to 12 entities, including sub-contractors, architects, electricians, plumbers,

and more in an effort to recreate the project file referenced in the October 2023 Order.[3] [Doc. No. 48-3 at 2].

On November 20, 2023, 171 Atlantic sent RMB a sworn certification that it had produced all relevant documents in its possession (the "Sworn Certification"). [Doc. No. 46 at 3–4; Doc. No. 70 at 3; Doc. No. 70-1]. The Sworn Certification stated:

> "The scope of the search conducted for responsive documents and things included, Defendant's place of business. The scope of this search includes all locations where responsive documents or things, including those stored electronically, reasonably might be found. The documents provided are result of a thorough search of the locations described above and no further documentation are available beyond what has previously been produced."

[Doc. No. 54-1 at 162–63; Doc. No. 70-1].

171 Atlantic Road, LLC Manager Bryan Melanson and counsel for 171 Atlantic, Attorney John Dow and Attorney Alicia Blanchard, signed the Sworn Certification. [*Id.*]. Given the slow progress of discovery and the time it would take to recreate the project file through third-party subpoenas which would result in further delays, RMB requested, and I granted, an extension of the deadline for completion of fact discovery to May 31, 2024. [Doc. No. 50].

### C. <u>Motion for Sanctions and the January 2024 Motion Hearing</u>

On December 20, 2023, RMB filed a Motion for Sanctions. [Doc. No. 47]. On January 3, 2024, 171 Atlantic filed an opposition. [Doc. No. 54]. On January 8, 2024, RMB filed a reply. [Doc. No. 57]. On January 11, 2024, I held a hearing on the motion. [Doc. No. 60].

---

[3] These entities include Accolade Environmental Contract, Corp., Andrew Sidford Architects, P.C., C&K Trucking, Camilo Environmental Group, Inc., Duct Works Engineering, Inc., East Coast Consulting, LLC, Family Security Systems, Inc., Hanson Electric Service, Inc., O'Regan Plumbing & Heating, Inc., Reliable Roofing and Sheet Metal, LLC, The Morin-Cameron Group, Inc., Xcel Fire Protection, Inc. [Doc. No. 48-3 at 2].

During the hearing, RMB argued sanctions were warranted for 171 Atlantic's failure to comply with the October 2023 Order. [Doc. No. 62 at 4]. In their motion, RMB claimed that the following items were missing or deficient as follows:

(1) Property photographs pre-construction and during construction, because 171 Atlantic only provided a handful of photographs of the exterior of the Property during demolition, and did not provide photographs of the interior of the Property pre-construction, during demolition, or during construction;

(2) The project file and documents relating to 171 Atlantic's renovation of the Property, because there were still many documents missing, including subcontracts, contracts with the architect, insurance documents, bonding documents, and any emails or other communications with any of the subcontractors, the architect, or other persons involved in the project;

(3) Engineering reports, because 171 Atlantic did not provide any engineering reports.

(4) Communications with the Melanson Group, because 171 Atlantic produced only one email between Ed Melanson, Bryan Melanson, and their general contractor.

[Doc. No. 48 at 5].

RMB also stated it had begun issuing subpoenas to subcontractors involved in the project and had received numerous relevant documents not produced by 171 Atlantic. [*Id*. at 1]. Despite these assertions, Attorney Dow represented that he and Attorney Blanchard had "gone over the requests numerous times with [Bryan Melanson, Ed Melanson, and their secretary]" and that all relevant documents had been provided to RMB. [Doc. 62 at 6, 8, 10, 14]. Attorney Dow also represented that "they [171 Atlantic] didn't understand what a construction envelope [project file], or whatever they were requesting, we didn't understand what it was because they don't keep those type of documents. Anything that was of consequence, permits, approvals, anything like that we supplied them to them [RMB] because they [171 Atlantic] kept those documents." [*Id.* at 6].

I ordered 171 Atlantic to search for any relevant documents 171 Atlantic may have missed and provide those documents to RMB. [*Id.* at 11]. I deferred any determination of sanctions until RMB finished receiving and reviewing any third-party subpoena responses. [*Id.* at 12]. I also issued a warning for 171 Atlantic to preserve and guard against spoliation of any electronic devices that could contain information relating to the Property and project. [*Id.* at 16–17]. Finally, I allowed RMB to file a renewed Motion for Sanctions by February 15, 2024; with any Opposition by 171 Atlantic to be filed by March 1, 2024. [*Id.* at 16; Doc. No. 61].

### D. Renewed Motion for Sanctions, the March 2024 Hearing, and the Second Renewed Motion for Sanctions

On January 12, 2024, RMB served on 171 Atlantic notices of taking deposition and subpoena for production of documents for Paula J. Stenquist ("Ms. Stenquist") and Susan Snook ("Ms. Snook"), former and current office managers at the Melanson Group, respectively; in response, on January 29, 2024, 171 Atlantic Road filed Motions for Protective Order to quash the subpoenas. [Doc. Nos. 64, 65]. On February 2, 2024, I denied the motions and ordered that Ms. Stenquist and Ms. Snook each produce all documents responsive to their respective subpoena that were in their possession, custody, or control, unless such documents were claimed to be privileged or otherwise protected. [Doc. No. 66].

On February 15, 2024, RMB filed its renewed Motion for Sanctions. [Doc. No. 67]. On March 1, 2024, 171 Atlantic filed an Opposition to the Motion. [Doc. No. 70]. At the March 6, 2024 hearing, RMB represented that, after much difficulty, in addition to numerous documents it received through approximately fourteen third-party subpoenas, it received another 750 new relevant documents from Ms. Snook. [Doc. No. 75 at 4–7]. With regard to the third-party subpoena documents, Attorney Dow acknowledged that "[his] client didn't keep copies of those." [Doc. No. 75 at 8]. With regard to the documents from Ms. Snook, Attorney Dow

admitted that he never spoke with Ms. Snook, [*Id*. at 11], and that he only "rel[ied] on my client [Bryan Melanson]" who informed counsel that "he provided [] everything that he had" despite his Sworn Certification "that documents provided [were the] result of a thorough search of the locations described above and no further documentation are available beyond what has previously been produced." [Doc. No. 54-1 at 162–63; Doc. No. 70-1; Doc. No. 75 at 11].

Given all this, I indicated that I would entertain a request for sanctions under Fed. R. Civ. P. 37. [Doc. No. 75 at 15]. On March 28, 2024, RMB filed its Supplemental Memorandum in support of its Motion for Award of Attorney's Fees and Costs. [Doc. No. 72]. On April 15, 2024, RMB filed a second renewed Motion for Sanctions.[4] [Doc. No. 73].

## II. LEGAL STANDARD

"Under Rule 37, the district court maintains a variety of tools at its disposal to sanction a party who violates discovery orders . . . ." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015) (citing Fed. R. Civ. P. 37(b)(2)(A)). "District courts may impose such sanctions with an eye both to penalize the particular noncompliance and to deter others from engaging in the same tactics." *Id*. (cleaned up).

District courts consider various factors when reviewing a Rule 37 motion for sanctions, including but not limited to "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *Id*. (cleaned up). Furthermore, a district court should provide "the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of such a penalty." *Id*. (cleaned up).

---

[4] RMB titled this Motion as a Supplemental Motion for Sanctions. [Doc. No. 73]. For clarity, I will refer to the motion as the Second Renewed Motion for Sanctions.

## III. ANALYSIS

RMB seeks the following sanctions: (1) that 171 Atlantic be prohibited from introducing into evidence at any deposition, hearing or trial, any documents or communications which were responsive to RMB's First Set of Discovery Requests and which 171 Atlantic failed to produce as of March 6, 2024; (2) that the Court provide at trial an adverse inference instruction to the jury which will require them to presume that 171 Atlantic spoliated evidence which was unfavorable to it; and (3) reasonable attorneys' fees related to the discovery dispute in the amount of $104,884.59.

### A. Noneconomic Sanctions

#### 1. Fed. R. Civ. P. 37(b)(2)(A)(ii)

##### a. Severity and Repetition of Discovery Violations, and Legitimacy of 171 Atlantic's Excuse for Failing to Comply

Here, 171 Atlantic has repeatedly failed to comply with its discovery obligations, deadlines, and the October 2023 Order without legitimate excuse, resulting in a fractured discovery process. Beginning in September 2023, RMB sent two deficiency letters to 171 Atlantic about the incomplete production of documents relating to the Property and its renovation. RMB also requested a discovery conference to resolve the dispute; however, 171 Atlantic did not respond to the request.

Unable to arrive at an informal resolution, RMB filed a Motion to Compel, again requesting documents relating to the Property and its renovation. Following the October 2023 Order mandating document production, 171 Atlantic appeared to have complied by providing additional documents to RMB.

However, upon closer inspection, 171 Atlantic's additional document production did not include such Court-ordered documents as photographs of the Property's interior pre-

construction, during demolition, or during construction, engineering reports, communications with the Melanson Group, subcontracts, contracts with the architect, insurance documents, bonding documents, or any email or other communications with any of the subcontractors, architect, or other persons involved in the project. As a result, RMB sent a third deficiency letter to 171 Atlantic, requested a discovery conference, and undertook the arduous task of issuing numerous third-party subpoenas to piece together the project file.[5]

171 Atlantic argues that it complied with the October 2023 Order because it produced all relevant documents in its possession. More specifically, and pursuant to the October 2023 Order, 171 Atlantic Road, LLC Manager Bryan Melanson and counsel for 171 Atlantic signed a Sworn Certification on November 20, 2023, that they had conducted a thorough search of locations where responsive documents may reasonably be found and that no further documentation was available beyond what had previously been produced. Furthermore, on January 11, 2024, at a hearing before this Court, counsel for 171 Atlantic repeatedly asserted that all relevant documents had been provided to RMB. Despite these assertions, RMB continued to retrieve relevant documentation from third-party subpoenas, including contracts, invoices, and plans from subcontractors relating to the project, and hundreds of emails and text messages between the Melanson Group and the subcontractors.

At a later hearing, on March 6, 2024, and upon RMB's renewed Motion for Sanctions, 171 Atlantic's non-compliance became apparent. RMB disclosed that a current employee of the Melanson Group, Ms. Snook, provided RMB with 750 new documents, 650 of which include internal emails and emails to third parties relating to the project. With regard to the documents obtained through third-party subpoenas, Attorney Dow acknowledged that "[his] client didn't

[5] It is important to note that RMB spelled out categories of documents that are normally included within a project file. [Doc. No. 32 at 3]. This was also noted in Judge Boal's October 2023 Order. [Doc. No. 42 at 3].

keep copies of those." [Doc. No. 75 at 8]. With regard to the documents from Ms. Snook, contrary to his representation at the January 2024 Hearing, Attorney Dow admitted that he never spoke with Ms. Snook, [*Id*. at 11], and that he only "rel[ied] on my client [Bryan Melanson]" who informed counsel that "he provided [] everything that he had." [*Id*.].

Attorney Dow's reliance on Mr. Melanson's assertion that he had provided everything is not enough, particularly where counsel had knowledge that Mr. Melanson could not use a computer. This conduct demonstrates willful ignorance. More problematically, Bryan Melanson, Attorney Dow, and Attorney Blanchard provided a signed sworn certification that they conducted a thorough search of Defendant's place of business, the scope of which included "all locations where responsive documents or things, including those stored electronically, reasonably might be found." [Doc. No. 46 at 3-4; Doc. No. 70 at 3; Doc. No. 70-1]. They signed under pains and penalties of perjury that "no further documentation are available beyond what has previously been produced." [*Id.*] Such assertions have been found to be plainly inaccurate. Apparently, Attorney Dow did no more than ask Mr. Melanson if he produced everything and only relied on his client's representation that there was no more. It strains credulity that neither he nor his client ever thought of asking the one person who would have known where the project file was – Ms. Snook. Indeed, counsel attempted to quash the subpoena to Ms. Snook. 171 Atlantic has provided no legitimate excuse for its failure to comply with its discovery obligations and the October 2023 Order and has acted in direct contravention to a signed sworn certification. Adding to such egregious behavior, counsel repeatedly and falsely assured the Court of its compliance.[6]

[6] At the January 2024 Motion Hearing, Attorney Dow repeatedly stated "Your Honor, we provided everything we have…[t]hey gave us everything they possibly could…I don't understand. We've done everything we can…and, Your Honor, I just want you to understand we've done everything we can…[b]ut we've done everything we can and we've given them [RMB] everything…[t]hey've told me they've given us everything that they have, and

171 Atlantic's ostensibly meager document production and hollow excuses do not come close to compliance. In sum, the severity of the violations, history of the proceedings, lack of legitimate excuse, and repetition of 171 Atlantic's failure to comply weigh heavily in favor of imposing sanctions. *See Equal Emp. Opportunity Comm'n v. Triple-S Vida, Inc.,* No. 21-cv-1463, 2023 WL 9183950 (D.P.R. Aug. 25, 2023), *report and recommendation adopted*, 2023 WL 9183951 (D.P.R. Oct. 6, 2023) (recommending Rule 37 sanctions against defendants because of severe noncompliance with court orders, continued discovery violations, and failure to provide outstanding discovery, which affected the plaintiff's ability to prosecute its claims).

**b. <u>Prejudice to the Plaintiff and the Court</u>**

Due to 171 Atlantic's noncompliance, RMB argues that it has suffered substantial prejudice and will continue to suffer prejudice in the absence of sanctions. The record supports this. Here, RMB is the buyer of the Property previously owned and renovated by 171 Atlantic. [Doc. No. 40 at ¶¶ 9–10]. RMB has alleged various counts, including Breach of Contract, Breach of Warranty, and Breach of the Implied Warranty of Habitability concerning issues and defects with the Property. [*Id*. at 54-8]. As buyer of the Property, RMB lacks access to crucial information to support its allegations. Rather, 171 Atlantic presumably controls most documents relevant to this case. Significantly, RMB's requested documents (i.e., the project file, engineering reports, construction photos, communications with subcontractors) go to the core of the issues raised in the case. Although, RMB has made efforts to piece information together

---

that's what we did. We gave them everything, we gave the other side everything that we have. They've told us they've given it to us…[w]e provided a certification at that time of what the judge asked us to do, and that's what we did. [Doc. No. 62 at 6-11].

through third-party subpoenas and depositions, many internal communications of the Melanson Group remain elusive, prejudicing RMB.[7]

By failing to fulfill its discovery obligations from the outset of this litigation and failing to comply with the October 2023 Order, 171 Atlantic caused unnecessary delay to both RMB and the court's operations. As a result of the discovery dispute, I extended the fact discovery deadline first to May 31, 2024, and later to October 11, 2024, and had to address the motion to compel, the motions for sanctions, and held multiple hearings relating to these motions. "[T]he district court has an interest in the efficient management of its docket." *Santiago-Díaz v. Laboratorio Clínico Y De Referencia Del Este*, 456 F.3d 272, 277 (1st Cir. 2006). Additionally, RMB continues to face prejudice because 171 Atlantic has yet to produce most of the discovery identified in the October 2023 Order. Thus, 171 Atlantic's failure to produce discovery that is critical to RMB's ability to prove its allegations and the detriment to court operations weigh heavily in favor of imposing sanctions.

Taking the relevant factors together, including the severity and repetitive nature of the violations, the lack of legitimate excuse, and the prejudicial effects on RMB and the Court, I impose the following sanction: Pursuant to Rule 37, 171 Atlantic is prohibited from introducing into evidence at any deposition, hearing, or trial any documents or communications that are responsive to RMB's First Set of Discovery Requests and which 171 Atlantic failed to produce as of March 6, 2024 – the date the Court issued its order on RMB's Renewed Motion for Sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (sanctions for not obeying a discovery order

[7] RMB states that after review of Ms. Snook's documents, RMB has identified at least a dozen more additional subcontractors, suppliers, designers, and others involved in the project who were not included in the initial round of subpoenas. [Doc. No. 74 at 9 n.3]. These include DeRosa Environmental Consulting, Inc. (property drainage), Joseph Scaduto (construction and remediation consultant), Radner Design Associates, Inc. (landscaping) and more. [*Id.*].

include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence").[8]

**2. Fed. R. Civ. P. 37(e)(2)(B)**

RMB also moves for the sanction of an adverse inference instruction to the jury, which will require the jury to presume that 171 Atlantic spoliated evidence unfavorable to it. "A 'spoliation' instruction, allowing an adverse inference, is commonly appropriate in both civil and criminal cases where there is evidence from which a reasonable jury might conclude that evidence favorable to one side was destroyed by the other." *United States v. Laurent*, 607 F.3d 895, 902 (1st Cir. 2010) (cleaned up). RMB has the burden of establishing such spoliated evidence. *Id*. (cleaned up).

"In general, the instruction usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily, *negligent* destruction would not support the logical inference that the evidence was favorable to the defendant." *Id*. (cleaned up). Overall, "[b]efore an adverse inference can arise, the sponsor of the inference must lay an evidentiary foundation, proffering evidence sufficient to show that the party who destroyed the document 'knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim.'" *Booker v. Mass. Dep't of Pub. Health*, 612 F.3d 34, 46 (1st Cir. 2010) (cleaned up).

Here, 171 Atlantic stands by its assertion that it produced all documents in its possession. RMB presents no direct evidence that 171 Atlantic destroyed relevant discovery documents; however, RMB points to the fact that it retrieved relevant discovery from third-party subpoenas.

[8] It is important to note that I gave 171 Atlantic ample notice and opportunities to respond to RMB's arguments for the specific sanctions it requested. Beginning in October 2023, 171 Atlantic was explicitly warned that failure to comply with the discovery order could result in sanctions.

RMB asserts that, taking 171 Atlantic at its word, those documents no longer exist in 171 Atlantic's possession because they have been destroyed.

A determination that relevant evidence has been destroyed "requires finding four elements: 1) an act of destruction; 2) discoverability of the evidence; 3) intent to destroy the evidence; and 4) occurrence of the act after commencement of litigation or, if before, at a time when the party was on notice that the evidence might be relevant to potential litigation." *McLaughlin v. Lenovo Glob. Tech. (United States) Inc.*, 682 F. Supp. 3d 149, 162 (D. Mass. 2023) (cleaned up). Here, RMB has not sufficiently evidenced a specific act of destruction by RMB nor an intent to destroy evidence. Even assuming destruction occurred, the facts support only negligence, not bad faith. Thus, I deny without prejudice RMB's request for a spoilation instruction at this time.

**B. <u>Economic Sanctions</u>**

In addition to noneconomic sanctions, Rule 37 mandates that courts order payment of "reasonable expenses, including attorney's fees, caused by the failure" to obey an order to provide discovery, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, RMB filed a Motion for Award of Attorney's Fees and Costs outlining fees and costs that RMB incurred in seeking a complete document production to RMB's first set of discovery requests. These discovery efforts include three deficiency letters, a motion to compel, at least fourteen subpoenas, two depositions, and motions for sanctions over the course of nine months. In total, RMB seeks $109,884.59.

A "fee award may go no further than to redress the wronged party 'for losses sustained'"; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (cleaned up). "The court's

fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued." *Id*. at 110.

I find RMB's requested fee rates for its attorneys to be reasonable. *See Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984). However, after carefully examining RMB's accounting of time, I find that some of the entries are duplicative and/or excessive, and will reduce the total requested amount of $101,098.28 by 25% and award $75,823.71. I decline to award the estimated fee of $5,000 for preparing the motion for sanctions. Finally, I award the costs of issuing subpoenas and the taking of depositions of Ms. Stenquist and Ms. Snook in the amount of $3,786.31. In sum, I conclude that a total sanctions award of $79,610.02 is reasonable and appropriate given the history and circumstances of this case.

## IV. CONCLUSION

For the above reasons, RMB's second renewed Motion for Sanctions, [Doc. No. 73], is ALLOWED in part and DENIED in part. RMB's original Motion for Sanctions, [Doc. No. 47], and renewed Motion for Sanctions, [Doc. No. 67], are DENIED as moot. I also order reasonable attorney's fees for losses sustained by RMB in the amount of $79,610.02.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge